1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11    ARSHAD WOOD,                                No.  2:21-cv-01572-TLN-CSK

12                      Plaintiff,

13            v.                                   **ORDER**

14    COUNTY OF STANISLAUS, et al.,

15                      Defendants.

16

17            This matter is before the Court on Defendants County of Stanislaus ("County"), Stanislaus

18    County Sheriff's Department (the "Sheriff's Department"), Bret Babbitt ("Babbitt"), and

19    Vukancic Bozidar's ("Bozidar") (collectively, "Defendants") Motion to Dismiss.  (ECF No. 48.)

20    Plaintiff Arshad Wood ("Plaintiff") filed an opposition (ECF No. 49), and Defendants filed a

21    reply (ECF No. 51).  For the foregoing reasons, the Court GRANTS in part and DENIES in part

22    Defendants' motion.

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

                                                   1

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

2         This case arises out of an alleged unreasonable search and seizure.  Plaintiff is an

3 individual who lives in Stanislaus County, California.  (ECF No. 47 at 3.)  Babbitt and Bozidar

4 were, at all relevant times, employed as Deputy Sheriffs by the Sheriff's Department.  (*Id.* at 4.)

5         Around 9:00 p.m. on September 1, 2019, Plaintiff was at his home in Patterson, California

6 with his family when Babbitt and Bozidar showed up at his residence.  (*Id.* at 5–6.)  Plaintiff

7 alleges Babbitt and Bozidar began shining a flashlight into his grandmother's motor vehicle,

8 which was unoccupied and parked on the sidewalk in front of a neighboring home.  (*Id.* at 6.)

9 Concerned about what the officers were doing, Plaintiff approached Babbitt and Bozidar and

10 asked whether they had a warrant.  (*Id.*)  The officers informed Plaintiff the matter was none of

11 his concern and instructed him to stand behind a line on his neighbor's driveway.  (*Id.* at 6–7.)

12 Plaintiff verbally objected to the continued inspection of his grandmother's vehicle and began

13 recording the incident with his cellular phone.  (*Id.* at 7.)  Plaintiff alleges Babbitt and Bozidar

14 became agitated by his conduct and began shining the flashlight directly in his eyes.  (*Id.*)  Then,

15 without provocation, Babbitt and Bozidar allegedly "grabbed [Plaintiff] by the back of his neck

16 and violently slammed him face first into the cement pavement."  (*Id.* at 7–8.)  Babbitt and

17 Bozidar then "sat on top of [Plaintiff] and dug their knees into his head, neck[,] and back, while

18 forcing his arms to the back of his head … ."  (*Id.* at 8.)  Plaintiff began to bleed from his face,

19 arms, and legs and suffered painful bruising and swelling to several parts of his body as a result of

20 Babbitt and Bozidar's conduct.  (*Id.*)

21        Once subdued, Babbitt and Bozidar handcuffed Plaintiff and placed him in the back of

22 their patrol vehicle to transport him to the county jail.  (*Id.* at 9.)  Plaintiff alleges Babbitt and

23 Bozidar ignored his complaints that his handcuffs were too tight and were cutting off his

24 circulation and began transporting him with the windows up and air conditioning off, in what felt

25 to him like 100-degree Fahrenheit temperature.  (*Id.*)  The stuffy, ardent conditions triggered

26 Plaintiff's asthma.  (*Id.*)  In an attempt to get fresh air, Plaintiff began tapping on the window to

27 get the officers to roll down his window, but his attempts were unsuccessful.  (*Id.* at 10.)  Instead,

28 Plaintiff alleges Babbitt and Bozidar became upset by his tapping and pulled over, opened the

door, and slammed Plaintiff on the cement pavement.  (*Id.*)  After "roughing up" Plaintiff, Babbitt and Bozidar placed Plaintiff back in the patrol vehicle and transported him to the hospital to receive treatment for his injuries.  (*Id.*)  The hospital subsequently released Plaintiff, and Babbitt and Bozidar booked him into the county jail, where officers searched his person and seized his personal belongings.  (*Id.*)  Plaintiff alleges the Sheriff's Department held onto his personal property for approximately three years.  (*Id.* at 11.)

During the booking process, Plaintiff alleges Babbitt and Bozidar "became frustrated with [him] because he refused to provide his legal name" and "pushed [Plaintiff's] hands behind his head, while he was still in handcuffs, causing excruciating pain."  (*Id.* at 10.)  The District Attorney subsequently charged Plaintiff with willfully resisting, delaying, or obstructing a peace officer in violation of California Penal Code § 148(a).  (*Id.* at 11.)

On February 14, 2020, Plaintiff filed a tort claim with the County, seeking compensation for Babbitt and Bozidar's conduct.  (*Id.* at 4–5.)  The County rejected Plaintiff's claim and mailed its rejection notice in March 2020.  (*Id.*)

On September 1, 2021, Plaintiff, then proceeding pro se and in forma pauperis, commenced this action against Defendants, alleging several causes of action.  (ECF No. 1.)  On March 1, 2022, the Court granted Defendants' unopposed motion to stay this action pending resolution of Plaintiff's criminal charge.  (ECF No. 17.)  The District Attorney dismissed the charge against Plaintiff in September 2022 after Plaintiff completed a diversion program (ECF No. 23 at 1; ECF No. 47 at 11), and the Court lifted the stay and ordered Plaintiff to file an amended complaint (ECF No. 28).

On November 11, 2023, Plaintiff filed the operative First Amended Complaint ("FAC") against Defendants, alleging fourteen causes of action: (1) excessive force under the Fourth Amendment pursuant to 42 U.S.C. § 1983 ("§ 1983"); (2) denial of medical care under the Fourth Amendment pursuant to § 1983; (3) unreasonable detention and arrest under the Fourth Amendment pursuant to § 1983; (4) unreasonable search and seizure under the Fourth Amendment pursuant to § 1983; (5) retaliation for protesting police action under the First Amendment pursuant to § 1983; (6) failure to intervene under 42 U.S.C. § 1986; (7) municipal

3

liability for an unconstitutional custom, practice, or policy under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ("*Monell*"); (8) municipal liability for failing to train, supervise, or discipline employees to prevent violations of constitutional rights under *Monell*; (9) municipal liability for the ratification of an unconstitutional act under *Monell*; (10) excessive force under article I, § 13 of the California constitution; (11) violation of the Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1); (12) false imprisonment under California Government Code §§ 815.2(a) and 820(a); (13) assault and battery under California Government Code §§ 815.2(a) and 820(a); and (14) negligence under California Government Code §§ 815.2(a) and 820(a). (ECF No. 47.)

On December 1, 2023, Defendants filed the instant motion to dismiss Plaintiff's FAC for failure to state a claim upon which relief can be granted.  (ECF No. 48.)  Plaintiff filed an opposition (ECF No. 49), and Defendants filed a reply (ECF No. 51).

**II.    STANDARD OF LAW**

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz*, 405 U.S. at 322.  A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief."  *Twombly*, 550

4

1   U.S. at 570 (internal citation omitted).

2       Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

3   factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

4   While Rule 8(a) does not require detailed factual allegations, "it demands more than an

5   unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

6   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

7   elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

8   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

9   statements, do not suffice."). Thus, "[c]onclusory allegations of law and unwarranted inferences

10  are insufficient to defeat a motion to dismiss" for failure to state a claim. *Adams v. Johnson*, 355

11  F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).  Moreover, it is inappropriate to assume the

12  plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

13  in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

14  *Council of Carpenters*, 459 U.S. 519, 526 (1983).

15      Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

16  facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim

17  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

18  reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

19  680.  While the plausibility requirement is not akin to a probability requirement, it demands more

20  than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility

21  inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

22  experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or

23  her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly

24  dismissed. *Id.* at 680 (internal quotations omitted).

25      In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits

26  thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

27  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

28  *Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-*

1   *Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true

2   allegations that contradict matters properly subject to judicial notice).

3       If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

4   amend even if no request to amend the pleading was made, unless it determines that the pleading

5   could not possibly be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d 1122,

6   1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995));

7   *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

8   denying leave to amend when amendment would be futile).

9       **III.   ANALYSIS**

10      Defendants move to dismiss Plaintiff's FAC, arguing: (1) "[a]ll new claims arising from

11  the separate incident of alleged excessive force during booking are barred by the statute of

12  limitations and do not relate back"; (2) all new claims arising from the alleged seizure of

13  Plaintiff's personal property during the booking process are barred by the statute of limitations

14  and do not relate back; (3) "[a]ll new claims arising from seizure of property during booking fail

15  to state a claim"; (4) "[t]he seventh 'cause of action' as a *Monell* claim, where based on anything

16  other than excessive force, are insufficiently pled in the FAC"; (5) "[t]he seventh and eighth

17  'causes of action' as a *Monell* claim, where based on anything failure to train other than excessive

18  force [sic], are insufficiently pled in the FAC"; (6) "[t]he ninth 'cause of action' as a *Monell*

19  claim for ratification (and any embedded claim for ratification in the seventh and eighth causes of

20  action) are insufficiently pled in the FAC"; (7) "[t]he tenth cause of action for violation of Art. I

21  section 13 of the California Constitution should be dismissed" because there is no private right of

22  action; and (8) "[a]ll state-based claims, where based on anything other than force, should be

23  dismissed for exceeding the scope of the tort claim."  (ECF No. 48 at 2; ECF No. 48-1 at 6–7.)

24  The Court will address each argument in turn.

25              A.    Statute of Limitations and Excessive Force Claims

26      Plaintiff's first, tenth, eleventh, thirteenth, and fourteenth causes of action include

27  allegations that Babbitt and Bozidar used excessive force when they arrested, transported, and

28  booked Plaintiff into the county jail in violation of state and federal law.  (ECF No. 1 at 12–15,

46–50, 52–56.)  Plaintiff's first cause of action is a § 1983 claim, while Plaintiff's tenth, eleventh, thirteenth, and fourteenth causes of action arise under California law.  Defendants move to dismiss these claims, arguing they are barred by the applicable statutes of limitations.[1]  (ECF No. 48-1 at 5.)

For § 1983 actions, "courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law."  *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007) (quoting *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004)).  The statute of limitations for personal injury actions in California is two years.  Cal. Civ. Proc. Code § 335.1.  "Although state law determines the length of the limitations period, federal law determines when a [§ 1983] claim accrues."  *Morales v. City of L.A.*, 214 F.3d 1151, 1153–54 (9th Cir. 2000) (citation omitted).  "Under federal law, 'a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.'"  *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (quoting *TwoRivers v. Lewis*, 174 F.3d 987, 992 (9th Cir. 1999)).  The same is true under California law.  *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988) ("The discovery rule provides that the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause." (citation omitted)).

The parties do not dispute the limitations period for Plaintiff's first, tenth, eleventh, thirteenth, and fourteenth causes of action is two years and began to run on September 1, 2019 — the date the officers allegedly used excessive force against Plaintiff — and would have ended on September 2, 2021, unless tolled.  (*See* ECF No. 48-1 at 6; ECF No. 49 at 7.)  However, the parties disagree about whether the limitations period was tolled and whether the claims in the FAC relate back to the claims in Plaintiff's original Complaint.[2]  (ECF No. 48-1 at 6; ECF No. 49 at 6.)

---

[1]     Because the limitations period for all of these causes of action are the same (discussed more below), the Court addresses Defendants' motion to dismiss these claims together.

[2]     As will be discussed, the Court finds Plaintiff's claims are timely because the statute of limitations was tolled.  Therefore, the Court need not address whether Plaintiff's claims in his FAC relate back to the claims in his original Complaint.

1        California law prohibits a person from bringing a civil action "for money or damages

2   against a peace officer or the public entity employing a peace officer based upon conduct of the

3   peace officer relating to the offense for which the accused is charged, including … arresting or

4   detaining the accused, while the charges against the accused are pending … ."  Cal. Gov't. Code §

5   945.3.  In such a case, the two-year statute of limitations is tolled "during the period that the

6   charges are pending … ."  *Id.*  "Accordingly, § 945.3 tolls a civil action when the 'but for' cause

7   of the claim is the 'conduct of the peace officer.'"  *Lockett v. Cnty. of L.A.*, 977 F.3d 737, 741

8   (9th Cir. 2020).

9        Defendants do not dispute that if tolling under California Government Code § 945.3

10   applies, Plaintiff's claims are timely.  Instead, Defendants contend the statute of limitations was

11   not tolled because Plaintiff was charged with "resisting arrest, and there are no allegations … that

12   any criminal charges arose from any later interactions during the booking process."  (ECF No. 48-

13   1 at 6.)  In opposition, Plaintiff argues he was "facing criminal charges related to the arrest that

14   [his] claims arise from" and therefore the statute of limitations was tolled under California

15   Government Code § 945.3.  (ECF No. 49 at 5–6.)

16        The Court agrees with Plaintiff and finds the statute of limitations was tolled while

17   Plaintiff's criminal charges were pending.[3]  As noted above, § 945.3 prevents individuals from

18   suing police officers for monetary damages "based upon conduct of the [officers] *relating to the*

19   *offense for which the accused is charged, including an act or omission in … arresting or*

20   *detaining the accused*, while the charges against the accused are pending … ."  Cal. Gov't. Code

21   § 945.3 (emphasis added).  During this period, the statute of limitations is tolled so long as the

22   officers' conduct is the but-for cause of the claims alleged against the officers.  *Lockett*, 977 F.3d

23   at 741.  Plaintiff's first, tenth, eleventh, thirteenth, and fourteenth causes of action allege Babbitt

24   and Bozidar used excessive force when they arrested, transported, and booked Plaintiff into the

25   county jail.  (ECF No. 1 at 12–15, 46–50, 52–56.)  Thus, Babbitt and Bozidar's conduct is the

26

27   ───────────────
     [3]        Because the Court finds the statute of limitations was tolled, and therefore Plaintiff's
28   claims are timely, the Court need not address whether Plaintiff's claims in his FAC relate back to
     the claims in his original Complaint.

1   but-for cause for these claims, and therefore, the two-year statute of limitations was tolled.  *See*

2   *Lockett*, 977 F.3d at 741–42; *Sterling v. City of Antioch*, No. 13-CV-00812-NC, 2013 WL

3   2949613, at *7 (N.D. Cal. June 14, 2013).

4          Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's first, tenth,

5   eleventh, thirteenth, and fourteenth causes of action based on the statute of limitations.

6                    B.       Statute of Limitations and Seizure of Personal Property Claims

7          Plaintiff's fourth, sixth, and ninth causes of action include allegations that Defendants

8   unlawfully seized Plaintiff's personal property during the booking process.  (ECF No. 47 at 10–

9   11, 21–23, 26–29, 42–46.)  Defendants move to dismiss these claims — in addition to Plaintiff's

10  tenth, eleventh, twelfth, thirteenth, and fourteenth causes of action — based upon the statute of

11  limitations, arguing again that California Government Code § 945.3 does not apply and that these

12  claims do not relate back to the claims in Plaintiff's original Complaint.  (ECF No. 48-1 at 6–7.)

13  For the reasons already discussed, however, the Court finds Babbitt and Bozidar's alleged

14  conduct is the but-for cause for these claims as well.  Thus, Plaintiff's claims are timely because

15  the statute of limitations was tolled.[4]

16         Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's fourth, sixth,

17  ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth causes of action based upon the statute of

18  limitations.

19                    C.       Seizure of Property During Booking

20         Defendants next move to dismiss "all federal and [state-law] claims based on the seizure

21  of [Plaintiff's] personal property during the booking process[,]" arguing the collection of

22  Plaintiff's belongings are incidental administrative steps that do not contravene the Fourth

23  Amendment.  (ECF No. 48-1 at 7.)  However, Defendants fail to identify which claims they

24  would like the Court to dismiss.

25  ///

26  _____

27  [4]        Because the Court finds the statute of limitations was tolled, the Court need not address
    Defendants' additional argument that Plaintiff's claims in his FAC do not relate back to the
    claims in his original Complaint.

28

1   Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's claims arising

2   from the seizure of Plaintiff's property.  *Cf. Sernas v. Cantrell*, No. 19-17610, 2021 WL 2103740

3   (9th Cir. May 25, 2021) ("[A] district court is not required to sift through allegations to see what

4   unidentified causes of action a pro se prisoner may have a claim for.").  Any renewed motion to

5   dismiss shall clearly identify which claims are subject to the motion.

6                              D.      *Monell* Claim — Custom of Excessive Force

7   Plaintiff's seventh cause of action is a *Monell* claim against the County and the Sheriff's

8   Department.  (ECF No. 47 at 29.)  Plaintiff alleges the County and the Sheriff's Department had

9   an unconstitutional custom, policy, or practice of using excessive and unreasonable force,

10  retaliating against individuals for protesting police action, employing and retaining officers

11  known to have dangerous propensities for abusing their authority, maintaining indifference

12  toward police beatings, failing to provide medical care, and conducting unlawful searches, among

13  other things.  (ECF No. 47 at 30–33.)  To support his claim, Plaintiff cites several unrelated cases

14  involving the alleged use of excessive force by officers employed by the County and the Sheriff's

15  Department.  (*See id.* at 34–35.)  Defendants move to dismiss Plaintiff's *Monell* claim, arguing it

16  is insufficiently pled to the extent it is based on anything other than excessive force.

17  Under *Monell*, "[a] government entity may not be held liable under 42 U.S.C. § 1983,

18  unless a policy, practice, or custom of the entity can be shown to be a moving force behind a

19  violation of constitutional rights."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir.

20  2011) (citing *Monell*, 436 U.S. at 694).  "[A] policy is 'a deliberate choice to follow a course of

21  action … made from among various alternatives by the official or officials responsible for

22  establishing final policy with respect to the subject matter in question.'"  *Oviatt By and Through*

23  *Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (quoting *Pembaur v. City of Cincinnati*,

24  475 U.S. 469, 483 (1986)).  "A 'custom' for purposes of municipal liability is a 'widespread

25  practice that, although not authorized by written law or express municipal policy, is so permanent

26  and well-settled as to constitute a custom or usage with the force of law.'"  *Young v. City of*

27  *Visalia*, 687 F. Supp. 2d 1141, 1147 (E.D. Cal. 2009) (quoting *City of St. Louis v. Praprotnik*, 485

28  U.S. 112, 127 (1988)).  "Liability for improper custom may not be predicated on isolated or

1    sporadic incidents; it must be founded upon practices of sufficient duration, frequency and

2    consistency that the conduct has become a traditional method of carrying out policy." *Trevino v.*

3    *Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th

4    Cir. 2001).  After establishing one of the methods of liability, "a plaintiff must also show that the

5    circumstance was (1) the cause in fact and (2) the proximate cause of the constitutional

6    deprivation."  *Id.*

7         Defendants contend Plaintiff "fails to allege any facts constituting a custom of failing to

8    train, retaliation, conducting unlawful detentions/arrests/search, hiring, retention, reporting,

9    discipline, and medical care of detainees."  (ECF No. 48-1 at 8.)  Defendants maintain the prior or

10   ongoing litigation involving the County and the Sheriff's Department that Plaintiff cites "do not

11   speak to a custom of retaliation, failure at medical provision, and so on not related to force."  (*Id.*)

12   In opposition, Plaintiff argues he has "not only stated the specific policies, practices and customs,

13   but has also provided [a] detailed explanation of the facts that led to his constitutional violations."

14   (ECF No. 49 at 12.)

15        The Court agrees with Defendants and finds Plaintiff has insufficiently stated his *Monell*

16   claim to the extent it is based on anything other than a custom of excessive force.[5]  Plaintiff

17   alleges the County and the Sheriff's Department have more than fifteen unconstitutional customs,

18   including an unconstitutional custom of retaliating against individuals for protesting police action.

19   (ECF No. 47 at 30–33.)  However, Plaintiff's FAC is devoid of any factual allegations from

20   which the Court can draw the reasonable inference that the County and Sheriff's Department's

21   alleged practice of retaliating against individuals for protesting police action is "so permanent and

22   well-settled as to constitute a custom or usage with the force of law."  *Young v. City of Visalia*,

23   687 F. Supp. 2d 1141, 1147 (citation and internal quotations omitted).  The same deficiency exists

24   for each of the other unconstitutional customs Plaintiff alleges Defendants maintain.  Indeed, the

25   only allegations of a custom that Plaintiff provides primarily deal with the use of excessive force.

26

27   [5]      Plaintiff's eighth and ninth causes of action are *Monell* claims based on failure to train and
     ratification theories.  (ECF No. 47 at 37–46.)  Defendants also move to dismiss these claims (ECF
28   No. 48-1 at 9–10), which the Court discusses *infra* Sections III.E–F.

1    (ECF No. 47 at 34–35.)

2        Accordingly, the Court DISMISSES with leave to amend Plaintiff's *Monell* claim in his

3    seventh cause of action to the extent it is based on anything other than a custom of excessive

4    force.

5        E.    *Monell* Claim — Failure to Train

6        Plaintiff's eighth cause of action is a *Monell* claim against the County and the Sheriff's

7    Department based on a failure to train theory.  (ECF No. 47 at 37.)  Defendants again move to

8    dismiss this claim to the extent it is based on anything other than excessive force.

9        "In limited circumstances, a local government's decision not to train certain employees

10   about their legal duty to avoid violating citizens' rights may rise to the level of an official

11   government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  But

12   "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim

13   turns on a failure to train." *Id.* (citation omitted).  Thus, to prevail on a failure-to-train theory, a

14   plaintiff must demonstrate that the local government's "failure to train amounts to deliberate

15   indifference to the rights of persons with whom the [officers] come into contact." *City of Canton,*

16   *Ohio v. Harris*, 489 U.S. 378, 388 (1989).  "Only then can such a shortcoming be properly

17   thought of as a … policy or custom that is actionable under § 1983." *Connick*, 563 U.S. at 61

18   (citation and quotations omitted).

19       "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a

20   municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty.*

21   *Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997).  "Thus, when …

22   policymakers are on actual or constructive notice that a particular omission in their training

23   program causes … employees to violate citizens' constitutional rights, the [local government]

24   may be deemed deliberately indifferent if the policymakers choose to retain that program."

25   *Connick*, 563 U.S. at 61.  "A pattern of similar constitutional violations by untrained employees is

26   'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.*

27   (quoting *Bryan Cnty.*, 520 U.S. at 409).

28   ///

12

1     Defendants contend Plaintiff has "not alleged any pattern of similar constitutional

2   violations nor [has he] provided any other factual allegations suggesting deliberate indifference."

3   (ECF No. 48-1 at 9.)  Defendants maintain the prior litigation relied upon by Plaintiff all sound in

4   excessive force, and therefore, anything other than the failure to train arising from excessive force

5   should be dismissed.  (*Id.*)  Defendants further contend that because the seventh cause of action

6   includes allegations that Defendants failed to train its officers, "the eighth cause of action is

7   redundant and should be dismissed in its entirety."  (*Id.* at 10.)  In opposition, Plaintiff

8   reincorporates his previous arguments, contending his "failure to train claims are sufficiently pled

9   in the FAC and are detailed in the factual allegations."  (ECF No. 49 at 12.)

10     The Court agrees with Defendants and finds Plaintiff's eighth cause of action is

11   insufficiently pled to the extent it is based on anything other than the County and the Sheriff's

12   Department's failure to train its officers not to use excessive force.  As discussed above, Plaintiff

13   alleges the County and the Sheriff's Department maintain more than fifteen unconstitutional

14   customs.  (*See* ECF No. 47 at 30–33.)  However, only some of these alleged customs concern the

15   County and Sheriff's Department's training, supervising, or disciplining procedures (*id.*), and all

16   the examples Plaintiff provides of similar constitutional violations — i.e., the purported pattern of

17   constitutional violations necessary to demonstrate the County and Sheriff's Department were

18   deliberately indifferent to Plaintiff's rights — involve allegations of excessive force.  (*See id.* at

19   34–36.)  Plaintiff fails to allege a pattern of constitutional violations for anything other than

20   excessive force, and therefore, only excessive force can serve as the basis for Plaintiff's failure to

21   train claim.

22     Accordingly, the Court DISMISSES with leave to amend Plaintiff's *Monell* claim in his

23   eighth cause of action to the extent it is based on anything other than the County and the Sheriff's

24   Department's failure to train its officers not to use excessive force.[6]

25   ///

26   _____

27   [6]     Because the Court finds Plaintiff's eighth cause of action, rather than his seventh cause of action, constitutes Plaintiff's *Monell* claim based on a failure to train theory, the Court finds the two causes of action are not duplicative and declines Defendants' invitation to dismiss Plaintiff's

28   eighth cause of action on that basis.

1

F.    *Monell* Claim — Ratification

2      Plaintiff's ninth cause of action is a *Monell* claim against the County and the Sheriff's

3 Department based on a ratification theory.  (ECF No. 47 at 37.)  Defendants move to dismiss this

4 claim, arguing it is insufficiently pled.  (ECF No. 48-1 at 10.)

5      "A municipality … can be liable for an isolated constitutional violation if the final

6 policymaker 'ratified' a subordinate's actions."  *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir.

7 1999) (citation omitted).  "To show ratification, a plaintiff must prove that the authorized

8 policymakers approve a subordinate's decision and the basis for it."  *Id.* at 1239 (citation and

9 internal quotations omitted).  "Accordingly, ratification requires … knowledge of the alleged

10 constitutional violation."  *Id.*  But, "[a] policymaker's knowledge of an unconstitutional act does

11 not, by itself, constitute ratification.  Instead, a plaintiff must prove that the policymaker approved

12 of the subordinate's act."  *Id.*  "A mere failure to overrule a subordinate's actions, without more,

13 is insufficient to support a § 1983 claim."  *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004)

14 (citation omitted).

15      Defendants contend "the FAC does not include sufficient allegations that meet the factual

16 'something more' than a finding of no violation" and that any "amendment as to the *Monell*

17 claims based on ratification would be futile."  (ECF No. 48-1 at 10–11.)  In opposition, Plaintiff

18 argues he has sufficiently stated his ratification claim because his FAC alleges the County and the

19 Sheriff's Department failed to take corrective action in the instant case, and numerous similar

20 incidents, and "failed to conduct any reasonable investigation into the complained incident,

21 thereby ratifying the conduct [of Babbitt and Bozidar]."  (ECF No. 49 at 12.)

22      The Court finds Plaintiff has sufficiently stated his *Monell* claim based on a ratification

23 theory.  Plaintiff alleges the County and the Sheriff's Department had actual or constructive

24 knowledge of the alleged beating he endured at the hands of Babbitt and Bozidar.  (ECF No. 47 at

25 42.)  Yet, Plaintiff alleges the County and the Sheriff's Department declined to investigate or

26 otherwise determine whether Babbitt and Bozidar used excessive force.  (*Id.*)  The County and

27 Sheriff's Department's decisions not to investigate the incident could reasonably be perceived as

28 approval of Babbitt and Bozidar's conduct.  *Larez v. City of L.A.*, 946 F.2d 630, 647 (9th Cir.

1  1991) ("The jury properly could find such policy or custom from the failure of Gates to take any

2  remedial steps after the violations." (citation omitted)); *McRorie v. Shimoda*, 795 F.2d 780, 784

3  (9th Cir. 1986) ("Policy or custom may be inferred if … the prison officials took no steps to

4  reprimand or discharge the guards, or if they otherwise failed to admit the guards' conduct was in

5  error." (citation omitted)).  At the motion to dismiss stage, this was all Plaintiff was required to

6  show.  *Iqbal*, 556 U.S. at 678; *Mendy v. City of Fremont*, No. C-13-4180 MMC, 2014 WL

7  1760226, at *3 (N.D. Cal. Apr. 2, 2014).

8  Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's *Monell* claim

9  in his ninth cause of action based on a ratification theory.

10  G.  California Constitution — Excessive Force

11  Plaintiff's tenth cause of action is an excessive force claim arising under article 1, section

12  13 of the California constitution.  (ECF No. 47 at 46.)  Defendants move to dismiss this claim on

13  the ground that no private cause of action for damages exists under article 1, section 13 of the

14  California constitution.  (ECF No. 48-1 at 11.)  Plaintiff does not necessarily dispute this point

15  but requests the Court utilize the framework articulated in *Katzberg v. Regents of Univ. of Cal.*,

16  29 Cal. 4th 300 (2002) to find a private cause of action for damages exists on the basis that

17  English common law provided such a remedy.  (ECF No. 49 at 13.)  However, this Court has

18  consistently held that article 1, section 13 of the California constitution does not confer a private

19  right of action for damages.  *See Est. of Hennefer v. Yuba Cnty.*, No. 222CV00389TLNKJN, 2023

20  WL 4108077, at *7 (E.D. Cal. June 21, 2023); *Risse v. Porter*, No. 2:19-CV-00624-TLN-AC,

21  2020 WL 1433144, at *8 (E.D. Cal. Mar. 24, 2020); *Hin v. U.S. Dep't of Just. United States*

22  *Marshals Serv.*, No. 221CV00393TLNJDP, 2022 WL 705617, at *5 (E.D. Cal. Mar. 9, 2022).

23  Plaintiff does not offer any argument for why the Court should reconsider its position.  Nor is the

24  Court inclined to do so.  Thus, granting leave to amend would be futile.

25  Accordingly, the Court DISMISSES without leave to amend Plaintiff's excessive force

26  claim in his tenth cause of action arising under article 1, section 13 of the California constitution.

27  *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1010 (9th Cir. 2008)

28  ("[L]eave to amend will not be granted where an amendment would be futile.").

15

1        H.        California Government Claims Act

2        Finally, Defendants move to dismiss all state-law claims that are based on anything other

3   than excessive force, arguing they exceed the scope of Plaintiff's tort claim.  (ECF No. 48-1 at

4   13.)

5        "In actions for damages against local public entities, the claims statutes require timely

6   filing of a proper claim as [a] condition precedent to the maintenance of the action."  *City of San*

7   *Jose v. Superior Ct.*, 12 Cal. 3d 447, 454 (1974) (citations omitted).  "Compliance with the claims

8   statutes is mandatory … and failure to file a claim is fatal to the cause of action."  *Id.*  The

9   applicable claims statute is California Government Code § 910 et seq., which requires a claim to

10  include the following: (1) the name and post office address of the claimant; (2) the post office

11  address to which the person presenting the claim desires notices to be sent; (3) the date, place and

12  other circumstances of the occurrence or transaction which gave rise to the claim asserted; (4) a

13  general description of the indebtedness, obligation, injury, damage or loss incurred so far as it

14  may be known at the time of presentation of the claim; (5) the name or names of the public

15  employee or employees causing the injury, damage, or loss, if known; and (6) the amount claimed

16  if it totals less than ten thousand dollars ($10,000), or an indication whether the claim would be a

17  limited civil case (i.e., $35,000 or less) if the amount claimed exceeds ten thousand dollars

18  ($10,000).  Cal. Gov't. Code § 910.  "[T]he purpose of these statutes is to provide the public

19  entity sufficient information to enable it to adequately investigate claims and to settle them, if

20  appropriate, without the expense of litigation."  *City of San Jose*, 12 Cal. 3d at 455 (citations

21  omitted).  Substantial compliance with the applicable tort claims statute is sufficient.  *Id.* at 456.

22       Defendants contend Plaintiff's tort claim "fails to speak of any facts of an unlawful

23  detention/arrest, denial or delay of medical care, retaliation, seizure of property, failure to

24  intervene, etc., such that [allowing Plaintiff to proceed on his state-law claims] would allow state-

25  based claims for relief that exceed the scope of the tort claim" contrary to law.  (ECF No. 48-1 at

26  14.)  In opposition, Plaintiff argues he substantially complied with § 910 and that Defendants

27  waived any objection based on defects or omissions in his tort claim by failing to give him notice

28  of the insufficiency pursuant to California Government Code § 911.  (ECF No. 49 at 14–16.)

16

1    As a preliminary matter, Defendants again fail to specify which causes of action they

2    invite the Court to dismiss.  In any event, the Court declines the invitation and finds Plaintiff has

3    substantially complied with § 910.  Substantial compliance requires the disclosure of sufficient

4    information on the face of the tort claim "to reasonably enable the public entity to make an

5    adequate investigation of the merits of the claim and to [enable it to] settle [the claim] without the

6    expense of a lawsuit … ."  *City of San Jose*, 12 Cal. 3d at 456.  Although Plaintiff's tort claim

7    does not mention an unlawful arrest, denial or delay of medical care, retaliation, or seizure of

8    property, it does specify the date of the incident, the officers involved, and the alleged injury

9    Plaintiff suffered.[7]  (ECF No. 14-2 at 11.)  Thus, Defendants had adequate information to

10   investigate the merits of Plaintiff's claims and the extent of any legal exposure prior to litigation,

11   but Defendants elected not to.  And to the extent Plaintiff's state-law causes of action exceed the

12   scope of his tort claim because Plaintiff failed to include certain information, Defendants have

13   waived any objection by failing to furnish Plaintiff with notice of his insufficient claim.  Cal.

14   Gov't. Code § 911.

15   Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's state-law

16   claims for failure to comply with the California Government Claims Act.

17   **IV.   CONCLUSION**

18   For the foregoing reasons, the Court GRANTS in part Defendants' Motion to Dismiss

19   (ECF No. 48) and DISMISSES Plaintiff's claims as follows:

20      1.   Plaintiff's *Monell* claim in his seventh cause of action, to the extent it is based on

21          anything other than a custom of excessive force, is DISMISSED with leave to amend;

22      2.   Plaintiff's *Monell* claim in his eighth cause of action, to the extent it is based on

23          anything other than the County and the Sheriff's Department's failure to train its

24          officers not to use excessive force, is DISMISSED with leave to amend; and

25      3.   Plaintiff's excessive force claim in his tenth cause of action arising under article 1,

---

[7]    Defendants request the Court take judicial notice of Plaintiff's tort claim form.  (ECF No. 48-1 at 14.)  However, the Court need not take judicial notice since the FAC refers to the tort claim form (ECF No. 47 at 4–5), and therefore, the document was incorporated into the FAC by reference. *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 836 n.2 (9th Cir. 2018).

1    section 13 of the California constitution is DISMISSED without leave to amend.

2 In all other respects, Defendants' Motion to Dismiss is DENIED.  (ECF No. 48.)

3    Any amended complaint shall be filed and served not later than thirty (30) days from the

4 electronic filing date of this Order.  Defendants shall file any responsive pleading not later than

5 twenty-one (21) days from the filing and service of any amended complaint.  If Plaintiff declines

6 to file an amended complaint, this matter will proceed on Plaintiff's first, second, third, fourth,

7 fifth, sixth, seventh (based only on excessive force), eighth (based only on excessive force), ninth,

8 eleventh, twelfth, thirteenth, and fourteenth causes of action, and Defendants shall file an answer

9 not later than twenty-one (21) days from Plaintiff's deadline for filing an amended complaint.

10    IT IS SO ORDERED.

11 Date: August 23, 2024

12

13

14

15    Troy L. Nunley
        United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28